UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MIGUEL ALFONSO SIRA-HURTADO,<br><br>                Plaintiff(s),<br><br>   v.<br><br>LAURA HERMOSILLO, et al.,<br><br>                Defendant(s). | CASE NO. C25-2173-KKE<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner filed a petition for a writ of habeas corpus, asserting that his re-detention during an immigration court hearing violated his right to due process. Dkt. No. 1. The briefing on Petitioner's habeas petition is now complete. Dkt. Nos. 7, 10. Because the Court finds that Petitioner has established that his re-detention without a hearing violates his right to due process, the Court will grant the habeas petition.

## I.    BACKGROUND

Petitioner arrived in the United States after fleeing Venezuela in November 2023 due to threats of harm from a paramilitary group and Venezuelan law enforcement. Dkt. No. 1-2 at 2–7, Dkt. No. 1-3 at 1. He entered the country via Texas, was initially detained by United States Border Patrol agents, found to be subject to removal under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), and issued a Notice to Appear. Dkt. No. 1-2 at 2–7. Petitioner was

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

then released on his own recognizance. Dkt. No. 1-2 at 2–7, Dkt. No. 9-1. Shortly after that, Petitioner moved to Seattle and applied for asylum. Dkt. No. 1-3 at 2–3.

In February 2025, the immigration court set a master calendar hearing for June 3, 2025. Dkt. No. 1-3 at 3. When Petitioner arrived for that hearing, the Department of Homeland Security ("DHS") requested dismissal of Petitioner's removal proceedings so that it could pursue expedited removal and the immigration judge agreed. *Id*. at 3–4. Petitioner asked for time to find a lawyer because he wanted to pursue his asylum claim, but the immigration judge denied this request. *Id*. at 4. The immigration judge asked Petitioner to wait outside in the hallway while he finalized a written order, and Petitioner was arrested by masked U.S. Immigration and Customs Enforcement ("ICE") agents in the hallway. *Id*. Petitioner was eventually transported to the Northwest ICE Processing Center, where he remains detained. *Id*. at 4–5.

On June 20, 2025, DHS became aware that Petitioner had been diagnosed with a serious mental condition and filed a motion to reopen standard removal proceedings for further findings on Petitioner's competency. Dkt. No. 8 ¶¶ 12, 13. Petitioner thereafter obtained counsel and appealed the dismissal of his removal proceedings. *Id*. ¶ 14. Both Petitioner and DHS have separately requested that the Board of Immigration Appeals remand his case,[1] but the Board has yet to rule on either request. *Id*. ¶ 17. DHS expects that Petitioner will proceed on the initial Notice to Appear, but he remains detained under Section 235(b) of the INA. *Id*. ¶¶ 18–19.

Petitioner filed a habeas petition on November 2, 2025. Dkt. No. 1. The Government[2] filed a return and Petitioner filed a traverse and response according to an expedited briefing

---

[1] Curiously, the names of DHS counsel who authorized and/or signed the motion to remand are redacted for unknown reasons. *See* Dkt. No. 1-2 at 17–20. The Court is not aware of a reason to conceal the identity of DHS attorneys.

[2] This order refers to the federal Respondents—Laura Hermosillo (Seattle Field Office Director of Enforcement and Removal Operations for ICE), Kristi Noem (DHS Secretary), Pamela Bondi (U.S. Attorney General), and DHS—collectively as "the Government."

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

schedule. Dkt. Nos. 6, 7, 10. After considering the briefing, the Court finds that Petitioner's re-detention without notice and an opportunity to be heard violates his right to due process. Accordingly, the Court will grant the habeas petition.

## II.     ANALYSIS

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his re-detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts have applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

The parties agree that the three-part *Mathews* test applies here (Dkt. No. 7 at 9, Dkt. No. 10 at 7), and the Court will consider each *Mathews* factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements, after first explaining its jurisdiction to review Petitioner's claim.

A.  **The Court Has Jurisdiction to Hear Petitioner's Claim.**

The Government argues that 8 U.S.C. § 1252(g) precludes this Court's review of "DHS's decision to process [Petitioner] through expedited removal." Dkt. No. 7 at 7. The Government contends that 8 U.S.C. § 1252(g) bars review of Petitioner's habeas claim because his detention "is a necessary result of DHS's decision to process him through expedited removal[.]" *Id*. at 9. The Government therefore reads Petitioner's challenge to his detention as a challenge to the Government's decision to commence removal proceedings. *Id*. at 7–9.

This argument rests on a misreading of Petitioner's claims. Petitioner does not seek review of anything directly related to his removal proceedings. Instead, he seeks judicial review of the procedure by which he was re-detained by an ICE officer without notice and a hearing before a neutral decisionmaker. *See* Dkt. No. 1 at 13–14. The Government has not presented any persuasive argument that the Court lacks the jurisdiction to review this constitutional claim, and the Court therefore rejects the Government's jurisdictional challenge. *See, e.g.*, *Munoz Materano v. Arteta*, __ F. Supp. 3d __, 2025 WL 2630826, at *10 (S.D.N.Y. Sep. 12, 2025) (finding that Section 1252(g) does not strip a court's jurisdiction to hear procedural challenges to re-detention of an individual previously released from immigration detention).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 4

Thus, having found jurisdiction to consider Petitioner's habeas petition, the Court now considers the merits of the petition using the framework of the *Mathews* factors.

**B.      Petitioner Has a Protected Interest in His Liberty.**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). That Petitioner was detained without notice or an opportunity to be heard, and remains detained months later, undoubtedly presents a deprivation of Petitioner's established interest in his liberty.

The Government agrees that Petitioner has a *general* interest in his freedom, but argues that he does not possess a separate or heightened liberty interest in the continuation of his conditional release. Dkt. No. 7 at 10. The Government notes (*id.*) that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process" (*Demore v. Kim*, 538 U.S. 510, 523 (2003)), but this authority does not indicate that detention *without due process* is constitutionally valid. This Court joins others in finding that Petitioner's interest in his freedom is constitutionally protected in this way. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."); *Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Ramirez Tesara v. Wamsley*, __ F. Supp. 3d __, 2025 WL 2637663, at *3 (W.D. Wash. 2025) ("When he was released from his initial

detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause.").

### C. The Risk of Erroneous Deprivation of Liberty is High.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest, and here, the Court finds a high risk of erroneous deprivation of Petitioner's liberty interest in the absence of a pre-detention hearing.

The parties agree that Petitioner did not receive notice or an opportunity to be heard before he was re-detained in a hallway after his immigration court hearing. The Government argues that any claim to notice or an opportunity to be heard "is simply more than due process requires in this case" because he was subject to expedited removal because he had been present in the United States for less than two years at the time he was processed for expedited removal. Dkt. No. 7 at 11.

Although the Government asserts that Petitioner falls within the mandatory detention scheme under 8 U.S.C. § 1225(b) simply because he was present in the United States for less than two years (Dkt. No. 7 at 11), this Court joins others in finding that this expansion of expedited removal to include Petitioner violates his constitutional right to due process. *See, e.g.*, *Make the Road N.Y. v. Noem*, __ F. Supp. 3d __, 2025 WL 2494908, at *10–13 (D.D.C. Aug. 29, 2025) ("The Court therefore rejects the Government's extraordinary request to treat as falling outside of the Constitution's due process guarantee the millions of immigrants who, although they may have entered unlawfully, have established lives here and made this country home."); *Salgado v. Mattos*, No. 2:25-cv-01872-RJB-EJY, 2025 WL 3205356, at *20 (D. Nev. Nov. 17, 2025) ("By subjecting noncitizens like Petitioners to mandatory detention, despite their significant due process rights as individuals present in the U.S., with no consideration of their deep financial, community, and

familial ties in the country, the government has proffered an interpretation of a federal statute that engenders constitutional issues." (citation modified)).

Moreover, Petitioner has identified multiple procedural irregularities that have occurred in his case. *See*, *e.g.*, Dkt. No. 1 at 9 n.2; Dkt. No. 10 at 3–4, 13–14. The Government does not respond to Petitioner's arguments regarding these deficiencies, instead suggesting, essentially, that the concept of expedited removal is fundamentally inconsistent with traditional hallmarks of due process. *See* Dkt. No. 7 at 11 ("The very nature of expedited removal does not comport with a requirement for a pre-deprivation hearing and additional process as demanded by [Petitioner]."). But especially considering these uncontested deficiencies, the Government has offered no reason that this Court should agree with its conclusory assertion (*id*.) that a system predicated on eliminating procedural safeguards will result in only "minimal" risk of deprivation of liberty interests. *See, e.g.*, *Make the Road N.Y.*, 2025 WL 2494908, at *4 ("Key to the speed of expedited removal is the lack of almost any judicial review."). Under these circumstances, the Court finds that the risk of erroneous deprivation of Petitioner's protected liberty interest is high.

**D.     The Government Interest in Civil Detention Without a Hearing Is Low.**

In the final *Mathews* factor, the Court considers the Government's interest in re-detaining Petitioner without a hearing. The Government argues that it has a heightened government interest in "removing [expeditiously] noncitizens, such as [Petitioner], who are apprehended shortly after crossing the border[.]" Dkt. No. 7 at 12.

This argument ignores the fact that Petitioner was apprehended shortly after crossing the border *and then released on his own recognizance* between November 2023 and June 2025. During that time, Petitioner built community, pursued a claim for asylum, and applied for work authorization. Dkt. No. 1-3 at 2–3. The Court finds that Government's interest in re-detaining noncitizens such as Petitioner who were initially released years ago without a hearing is minimal:

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 7

any administrative or financial burdens in providing Petitioner a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue. *See, e.g., Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Based on this review of the *Mathews* factors, the Court finds that Petitioner has a protected liberty interest in his continuing release from detention, and that due process requires that Petitioner receive a hearing with proper notice before he can be re-detained.

### III.   CONCLUSION

For these reasons, the Court GRANTS Petitioner's petition for a writ of habeas corpus. Dkt. No. 1. The Court ORDERS that Petitioner shall be released from detention immediately and may not be re-detained until after a hearing with adequate notice to determine whether detention is appropriate.

Dated this 26th day of November, 2025.

Kymberly K. Evanson
United States District Judge